FILED
Sep 09, 2025
09:33 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Kimberly Reed | Docket No. 2024-40-5803 |
| v. | State File No. 44947-2024 |
| Critical Nurse Staffing, LLC, et al. | |
| and | |
| Troy Haley, as Administrator of the Bureau of Workers' Compensation Subsequent Injury and Vocational Recovery Fund | |
| Appeal from the Court of Workers' Compensation Claims Robert V. Durham, Judge | |

---

### Affirmed in Part, Reversed in Part, and Remanded

---

In this interlocutory appeal, the employer argues the trial court erred in ordering it to provide the employee a panel of otolaryngologists and in ordering it to authorize a second opinion examination. The employee originally reported a work-related accident in which she apparently stumbled while at a patient's home and grabbed a doorframe or railing to steady herself, which caused her to twist her left arm/shoulder. She later reported that she hit the right side of her face and head on a wall during the incident. The authorized orthopedic physician concluded the employee was not a good candidate for shoulder surgery, and the employee requested a second opinion. In addition, the employee sought treatment on her own for "swelling" and "oozing" in her right ear, then requested a panel of otolaryngologists for treatment of her apparent temporomandibular joint disorder she believes was caused by the accident. Following an expedited hearing, the trial court ordered the employer to provide both a second opinion examination related to her left shoulder condition and a panel of otolaryngologists to evaluate her temporomandibular joint condition. The employer has appealed. Having carefully reviewed the record, we affirm the trial court's order in part, reverse it in part, and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

Nicholas A. Lastra, Brentwood, Tennessee, for the employer-appellant, Critical Nurse Staffing, LLC

Lane Moore and Jenna Johnson, Cookeville, Tennessee, for the employee-appellee, Kimberly Reed

Patrick Ruth, Nashville, Tennessee, for the appellee, Subsequent Injury and Vocational Recovery Fund

## Factual and Procedural Background

Kimberly Reed ("Employee") worked as a home healthcare nurse for Critical Nurse Staffing, LLC ("Employer"). On or about June 17, 2024, as Employee was preparing to leave a patient's home, she apparently slid, slipped, or tripped on a rug. As she was doing so, she grabbed a doorframe or railing with her left hand and twisted, causing pain and symptoms in her left arm and shoulder. At some point thereafter, Employee alleged she also suffered injuries to her head and face that she believes resulted from striking the right side of her head on a wall during the incident.[1]

The following day, Employee contacted a company called "AmCares" to report the incident.[2] According to a written report generated as a result of that call, Employee described "taking trash from patient's room outside/stumbled down steps/held door trim." She reported twisting her left arm and stated that her left hand, forearm, left wrist, upper arm, left shoulder, neck, and left cheek were swollen. There was no indication on the AmCares report suggesting that Employee described striking the right side of her head or face on a wall. She was referred to AFC Urgent Care ("AFC").

The June 18 report of Employee's first visit to AFC contained in the record is a single page and includes no description of the work accident. Employee was evaluated and advised she could return to work but not to use her left arm. The provider also marked that she could engage in "sedentary work" only. She was referred to an orthopedic specialist.

---

[1] Neither the petition for benefit determination nor Employee's Rule 72 Declaration filed in support of her petition described the alleged accident in detail. For example, Employee's petition merely says, "Employee tripped and fell." Her Rule 72 Declaration merely states, "I sustained an injury at work." Meanwhile, numerous medical records submitted by the parties do not indicate she fell but instead suggest she twisted while preventing herself from falling. The first medical record from the day after the accident appears to be incomplete and contains no description of the accident. Moreover, because the trial court's order was issued following an on-the-record determination, there was no witness testimony to consider. Thus, we have gleaned a description of the alleged accident from various medical records.

[2] The record is unclear as to whether reporting a work-related accident to AmCares is the proper protocol for this employer. However, Employer does not challenge the timeliness of Employee's notice of a workplace accident.

2

On June 27, Employee went to her primary care physician, Dr. Allison Simms, complaining of right ear pain, swelling, and oozing from the ear "for about a week and a half now." Dr. Simms's report specifically says, "[n]o injuries to the area." Employee also reported being "on workers['] comp for a shoulder injury." There is no indication in this report that Employee described striking her right ear, face, or head during the work-related accident. She was diagnosed with an acute ear infection and prescribed an antibiotic.

Employer provided a panel of orthopedic specialists, and Employee selected Dr. Kyle Achors, who first saw Employee on July 11. During that visit, Employee complained of left shoulder pain that began after the June 17 work accident, which he described as a "fall injury." During his physical examination, Dr. Achors found Employee to have "full range of motion of the cervical spine without pain." The left shoulder examination revealed no bruising or skin discoloration, but there were limitations in her range of motion. X-rays of the left shoulder showed no fractures or dislocation. Dr. Achors concluded Employee likely suffered a traumatic tear of the left rotator cuff, and he ordered an MRI. That test revealed a labral tear, a small, full-thickness tear of the supraspinatus tendon, and a complete rupture of the biceps tendon.

By July 30, Employee reported to Dr. Achors that her pain had decreased to a 2/10 but that her symptoms were aggravated by daily activities. After reviewing the MRI results, Dr. Achors advised Employee that her rotator cuff tear could be treated surgically but that the biceps tendon injury had a "high chance of doing well without surgery." Dr. Achors recommended that Employee work to reduce her body-mass index and, in the meantime, he recommended conservative treatment, including injections and physical therapy.

When Employee returned to Dr. Achors in late August, her left shoulder pain had increased to a 7/10. She apparently had not begun physical therapy due to lack of authorization from Employer's insurer. Dr. Achors commented that physical therapy is "integral for nonoperative management of these injuries," and he advised Employee he would order it again.

Employee then returned to AFC on August 28 with complaints of left arm pain, left shoulder pain, and neck pain, which she described as "constant" and "sharp." The provider noted no tenderness or swelling in the shoulder or cervical spine but decreased range of motion in the left shoulder. The provider also noted "abnormalities" in the biceps tendon and/or rotator cuff. Employee informed the provider that she had seen an orthopedic physician for her shoulder complaints but had not been evaluated for her neck complaints. In addition to her shoulder-related diagnoses, the provider diagnosed a muscle strain in her neck and recommended an orthopedic evaluation for her cervical spine.

On October 15, Employee returned to Dr. Achors for further evaluation of her left shoulder. She also advised Dr. Achors that she was seeking an evaluation of her neck pain.

3

During his physical examination, Dr. Achors found evidence of "tenderness about the cervical spine" and "reproducible pain about the trapezial region with neck . . . motion." He also "recommend[ed] she be evaluated by a spine specialist." In November, Dr. Achors advised Employee to continue with her physical therapy for her shoulder. In addition, he stated, "Patient will continue to work toward weight loss that she may achieve a BMI that is [an] acceptable risk for surgery."

Employee returned to her primary care physician in November with complaints of "crusting of the right ear and a lot of drainage coming from the ear." In the margin of that report, someone wrote "clear drainage from ear, eye, nose . . . fell and hurt her neck on right side and [symptoms] have been ever since." The nurse practitioner who saw Employee that day commented that the patient was concerned her ear symptoms could be related to "some cervical neck trauma," which she said occurred "right before these symptoms started." As a result, the provider recommended that she be seen by an "ENT for further evaluation."

As a result of the recommendation from her primary care provider, Employee sought an evaluation with Dr. William Horton, an otolaryngologist. In December 2024, Employee was seen by a physician's assistant in Dr. Horton's office, Lauren Clear. According to the December 2 report, Employee told Ms. Clear that, on June 16, she "was leaving her house and fell and had a pain that went from her neck to her arm." She complained of drainage from her ear, eye, and nose since the time of the accident. Ms. Clear ordered a "thin cut CT" and recommended that she follow up with Dr. Horton.

In February 2025, Employee returned to Dr. Achors, reporting her left shoulder condition was essentially the same. Dr. Achors noted that patient had made "no progress towards losing weight [to] become an acceptable candidate for surgery." He then referred Employee for a functional capacity evaluation with a goal of placing her at maximum medical improvement with respect to her shoulder condition. Significantly, Dr. Achors included the following in his report:

> Patient did voice her wish to obtain a [second opinion] which I think . . . is reasonable[;] however[,] I do suspect that a [second opinion] . . . will yield a similar treatment plan to [mine].

Eventually, Employee received authorization to be evaluated by Dr. Patrick Bolt, an orthopedic specialist, for her neck complaints. On February 28, 2025, Employee was seen by a nurse practitioner in Dr. Bolt's office, Ashley N. Self. Ms. Self noted that an MRI of the cervical spine dated February 14 showed evidence of "multilevel degenerative changes with degenerative edema about the C7-T1 facet joint on the right likely a source of pain." There was also evidence of "[m]ultilevel mild stenosis accentuated by congenital spinal canal narrowing" and "[m]ultilevel foraminal stenosis mild to moderate in nature severe on the right at C5-6."

4

In addition to the findings related to Employee's neck, Ms. Self also noted "[n]onorthopedic complaints including ringing in the ears, facial and ear pain, tremors, [and] dizziness," as well as "[e]ar drainage," which was "being worked up by primary care." Ms. Self concluded that Employee had suffered a "cervical strain/sprain" and recommended physical therapy. Ms. Self's report was signed by Dr. Bolt as her "supervising physician."

Employee saw the ENT specialist, Dr. Horton, in March 2025. Dr. Horton's March 25 report indicates Employee was last seen on December 26, 2024; however, the December 26 report is not contained in this record. The March report indicated Dr. Horton had previously diagnosed a temporomandibular joint ("TMJ") disorder and had recommended a course of medications. In the "Historical Summary" section of his March report, Dr. Horton noted that the patient reported she "[w]as coming out [of] a house on the front door and foot got caught, she fell and tore rotator cuff." He ordered an "MRI of the TMJs." Thereafter, in response to a letter from Employee's counsel, Dr. Horton agreed in April 2025 that Employee's "trip and fall work accident on June 17, 2024 contributed more than 50% in causing her [TMJ] disorder for which [he had] ordered an MRI . . . considering all causes."

In May 2025, Employee filed a request for an on-the-record determination as to whether she was entitled to a second opinion examination with respect to the issue of surgery for the left shoulder, as well as a panel of otolaryngologists for evaluation of her ear and TMJ complaints.[3] In a June 18, 2025 expedited hearing order, the trial court determined that Employee was entitled to a second opinion with a shoulder specialist to evaluate the viability of surgical treatment and a panel of otolaryngologists to evaluate her TMJ condition. With respect to the panel of otolaryngologists, the court specifically found that Employee "is not likely to prove that her current ear and face symptoms are causally related to her work injury." Nevertheless, the court determined that because she timely reported the work injury and expressed a need for medical care for her ear/face condition, "she is entitled to a panel of otolaryngologists to evaluate and treat any work-related injury to her head and face." Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2024). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be

---

[3] Employer objected to an on-the-record determination and requested an in-person evidentiary hearing. However, the trial court denied that request in a subsequent docketing notice.

afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2024).

## Analysis

On appeal, Employer asserts the trial court erred in ordering it to provide a panel of otolaryngologists to evaluate Employee's ear/face/TMJ complaints and in ordering it to provide a second opinion as to whether left shoulder surgery is reasonable and necessary as a result of her rotator cuff injury.

Before we address the merits of this appeal, however, we note that Employer filed its notice of appeal on June 26, 2025. Thereafter, Employee filed a motion to supplement the technical record, which the trial court denied on July 28, 2025. Given this procedural posture, Employer's brief was due no later than August 11, 2025. *See* Tenn. Comp. R. & Regs. 0800-02-22-.05(2) (2023). Yet, Employer did not file its brief until August 22. Employee's brief was due no later than August 25, 2025, but she did not file a brief until September 5, 2025. Moreover, neither party filed a motion for an extension of time or a motion to allow a late-filed brief. *See* Tenn. Comp. R. & Regs. 0800-02-22-.04. As we have observed on numerous other occasions, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Prof'l Responsibility of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010). When parties fail to offer substantive *and timely* arguments on appeal, an appellate court's ability to conduct meaningful appellate review is significantly hampered. *See, e.g.*, *Holmes v. Ellis Watkins d/b/a Watkins Lawn Care*, No. 2017-08-0504, 2018 TN Wrk. Comp. App. Bd. LEXIS 7, at *3-4 (Tenn. Workers' Comp. App. Bd. Feb. 13, 2018). In short, we have no timely-filed brief from either party, and we decline to consider either late-filed brief.[4]

Yet, despite the lack of a timely-filed brief from either party, Employer did identify two issues in its notice of appeal and offered some semblance of an argument in support of its position on the issues it raised. First, Employer asserted that the trial court erred in ordering a panel of otolaryngologists because Employee "is not likely to prove that her current ear and face symptoms are causally related to her work injury." Second, it asserted the trial court erred in ordering a second opinion evaluation of the left shoulder "when

---

[4] Employee filed a motion to exclude Employer's late-filed brief. Given our exclusion of both late-filed briefs, this motion is denied as moot.

surgery was not recommended by her authorized treating physician because of risks associated with employee's body weight." Thus, we will address each issue in turn.

*Panel of Otolaryngologists*

It is well established that, when an employee reports a work-related accident and expresses a need for medical care, an employer generally is obligated to provide a panel of physicians for authorized medical treatment. *See, e.g.*, *Rhodes v. Amazon.com*, No. 2018-01-0349, 2019 TN Wrk. Comp. App. Bd. LEXIS 24, at *13 (Tenn. Workers' Comp. App. Bd. June 11, 2019) ("[I]n any case when the employee has suffered an injury and expressed a need for medical care, the employer shall designate a group of three (3) or more independent reputable physicians."). Moreover, we have previously concluded that an employee need not appreciate the extent or nature of every injury that arose primarily from a work accident to qualify for benefits for such an injury. *See, e.g.*, *Sullivan v. Petree Arbor Lawn & Landscape, Inc.*, No. 2023-03-8156, 2024 TN Wrk. Comp. App. Bd. LEXIS 43, at *11 (Tenn. Workers' Comp. App. Bd. Nov. 13, 2024) (holding an employee was entitled to an evaluation of her left shoulder after reporting an accident in which she struck the front of her upper body against a truck and complained of pain on both the right and left sides of her upper body but did not specifically report a left shoulder injury).

However, there are certain exceptions to this general rule. For example, if an employer disputes the occurrence of the alleged accident or asserts an affirmative defense to the compensability of the claim, it may decline to provide a panel of physicians and, as a result, accepts the risks of such a decision. As we explained in *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015):

> If an employer chooses to deny the claim following its initial investigation, the employee must come forward with sufficient evidence from which the trial court can determine that the employee likely will prove a compensable "injury by accident" at a hearing on the merits in accordance with section 50-6-239(d)(l).

*Id.* at *14.

In the present case, Employer denied that Employee's facial complaints are compensable, and the trial court determined, based on the evidence presented to date, that Employee "is not likely to prove that her current ear and face symptoms are causally related to her work injury." We conclude this finding is supported by the record. In such circumstances, therefore, Employee had the burden to "come forward with sufficient evidence of an injury by accident from which the court can conclude that . . . she is likely to prevail at a hearing on the merits." *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept.

29, 2015). Here, there is no credible evidence in the record to support a finding that the work accident included Employee striking the right side of her head/face. We have no sworn testimony from Employee regarding the details of the alleged accident. As noted above, neither her petition for benefit determination nor her Rule 72 Declaration included any description of the alleged accident. Moreover, because this was a determination on the record, there was no hearing with sworn testimony. Thus, we are limited to reviewing the descriptions of the accident contained in various medical records, and those descriptions vary significantly. In some medical records, the provider recorded a description of Employee sliding or tripping over a rug and reaching out to grab a doorframe or railing to steady herself, resulting in a twisting injury to her left upper extremity. In other reports, however, she described a trip and fall that caused her rotator cuff tear. Most medical records contain no reference to her striking the right side of her face or head in the incident. Moreover, Dr. Horton based his causation opinion, in part, on his belief that Employee suffered a fall, which is not supported by the record. In short, this record contains no consistent description of the alleged work accident, and we have no sworn testimony to consider.

We conclude the preponderance of the evidence presented to date supports the trial court's finding that Employee is not likely to prove she suffered a head or face injury during the work-related accident. The burden of proof was on Employee to establish "sufficient evidence of an injury by accident." Given the inconsistent descriptions of the work accident contained in the medical records and the absence of any sworn testimony from Employee, we further conclude, at this interlocutory stage of the case, that there is insufficient evidence to support the trial court's order for a panel of otolaryngologists to evaluate her TMJ condition in the context of her work-related accident. That aspect of the trial court's order, therefore, is reversed.

*Second Opinion Examination*

Employer also contends the trial court erred in ordering it to provide a panel of specialists for a second opinion examination regarding Employee's need for shoulder surgery. Tennessee Code Annotated section 50-6-204(a)(3)(C) describes circumstances in which an injured worker is entitled to a second opinion examination. We previously considered that statutory language in *Petty v. Convention Production Rigging*, No. 2016-06-0841, 2016 TN Wrk. Comp. App. Bd. LEXIS 95 (Tenn. Workers' Comp. App. Bd. Dec. 29, 2016), and explained as follows:

> The complete sentence from which [the employee] asserts he has the right to a second opinion . . . is as follows:
>
> > When the treating physician or chiropractor refers the injured employee, the employee shall be entitled to have a second opinion on the issue of surgery and diagnosis *from a physician*

> *or chiropractor from a panel of two (2) physicians practicing
> in the same specialty as the physician who recommended the
> surgery.*

> Tenn. Code Ann. § 50-6-204(a)(3)(C) (2015) (emphasis added).  We find the
> final phrase of this sentence to be of particular significance in the context of
> this case.  The phrase "as the physician who recommended the surgery"
> necessarily requires there to be an opinion of a specialist recommending
> surgery before an injured worker is entitled to a second opinion on the issue
> of surgery and diagnosis.

*Id.* at *20-21.  In the present case, therefore, the critical issue is whether Dr. Achors made a recommendation for shoulder surgery that would trigger Employee's entitlement to a second opinion examination.  We conclude the record supports a finding that he did.

First, in his July 11, 2024 report, Dr. Achors stated, "Given the improved repair rates with timely diagnosis *and operative repair* of traumatic rotator cuff tears, I recommended we obtain an MRI of the shoulder."  (Emphasis added.)  After reviewing the MRI results in July 2024, Dr. Achors stated in his July 30 report that he "discussed surgical treatment to perform a rotator cuff repair."  Before proceeding with such treatment, however, he advised Employee to "work on losing weight to get her BMI [under] 50."  A reasonable interpretation of these reports is that Dr. Achors believed surgery was a good treatment option but that certain conditions needed to be met before he would perform such a procedure.  Second, in his February 2025 report, Dr. Achors agreed that a second opinion examination to consider the issue of shoulder surgery was reasonable.  Finally, in a brief filed with the trial court prior to the expedited hearing, Employer suggested it had already secured a "second opinion" from Dr. Hovis, who apparently reviewed medical records Employer sent him and declined to see Employee in person.  Even if there was a colorable argument that a medical records review alone could constitute a second opinion examination, Employer has failed to make that argument on appeal and, thus, the argument is waived.  Consequently, we agree with the trial court that Employee is entitled to a second opinion examination on the reasonableness and necessity of shoulder surgery under the circumstances presented in this case.

### Conclusion

For the foregoing reasons, we affirm the trial court's order for a second opinion examination on the issue of left shoulder surgery, we reverse the trial court's order for a panel of otolaryngologists at this stage of the case, and we remand the case.  Costs on appeal are taxed to Employer.

9



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

Kimberly Reed

v.

Critical Nurse Staffing, LLC, et al.,

and

Troy Haley, Administrator of the Bureau of Workers' Compensation Subsequent Injury and Vocational Recovery Fund

Appeal from the Court of Workers' Compensation Claims
Robert V. Durham, Judge

Docket No. 2024-40-5803

State File No. 44947-2024

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 9th day of September, 2025.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Gregory H. Fuller<br>Nicholas A. Lastra | | | | X | ghfuller@mijs.com<br>nalastra@mijs.com |
| Lane Moore<br>Jenna Johnson | | | | X | lane@moorerader.com<br>jenna@moorerader.com |
| Patrick Ruth | | | | X | patrick.ruth@tn.gov |
| Robert V. Durham, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov